UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| REGGIE D. HUFF,<br><br>                Plaintiff,<br>vs.<br><br>CITY OF BROOKINGS POLICE DEPT.,<br>DAWN M. ELSHERE, DAVID ERICKSON,<br>JOEL PERRY, SEAN DOREMUS, MARISSA<br>D. MARSHALL, RICHELLE GUERRIERI,<br>THE SDSU FOUNDATION, STEVE<br>ERPENBACH, and JANE &/OR JOHN DOES,<br><br>                Defendants,<br><br>and<br><br>DAWN M. ELSHERE,<br><br>                Nominal Defendant. | 4:22-CV-4020-LLP<br><br>**MEMORANDUM OPINION AND ORDER** |

      Pending before the Court are five separate motions to dismiss filed by the defendants in this case. (Docs. 17, 22, 27, 41 and 49.)  Plaintiff, Reggie Huff ("Huff"), filed pro se responses and objections to each of the five motions to dismiss.  Huff also filed motions for a preliminary injunction, for a pleading practice order, and to disqualify certain defense counsel.  (Docs. 3, 5 and 54.)   For the following reasons, the motions to dismiss are granted and Huff's motions are denied as moot.

### BACKGROUND

      On Tuesday, November 26, 2019, Huff placed a call to Marissa Marshall (Marshall) at her workplace, the South Dakota State University Foundation ("SDSU Foundation").  (Doc. 1-1.)  His main goal was to secure a "dating agreement." (Doc. 1, p. 17, ¶ 71.)  Marshall declined the invitation, but Huff says he understood her to be interested in arranging another time to meet.

1

On December 2, 2019, Huff called Marshall again while she was at work. (Doc. 1-1.) This time Marshall revealed she had a boyfriend, that she would not be able to go out with Huff, and she said they should go their separate ways. (Doc. 1, p. 18, ¶ 77.) Huff asserts that he later found out Marshall's boyfriend was Sean Doremus, a police officer with the Brookings Police Department. ("BPD"). Huff alleges that Doremus encouraged Marshall to file a complaint with the police. Officer Joel Perry called Huff and identified himself as a detective with the Brookings Police Department. Perry asked Huff to come to the police station to discuss an incident that needed to be resolved. When they spoke, Perry told Huff that he needed to accept that Marshall was not interested in him, and to stop contacting her.

Subsequently, on December 6, 2019, Huff wrote a letter to Marshall. Among other things, Huff accused Marshall of filing a false police report. Huff threatened legal action against Marshall and asked her to pay damages to him in the amount of $750.00. After receiving the December 6, 2019 letter from Huff, Marshall sought a protection order against him. In response, Huff sought protection orders against Marshall, Perry and Doremus.

Huff alleges that Detective Perry told Huff that the December 6, 2019 letter could be enough to have him charged with stalking. Huff contends that, as part of Perry's ensuing investigation, Perry called Richelle Guerrieri, a woman who obtained a protection order against Huff in Ohio in 2012. Huff alleges that Perry obtained false information from Guerrieri about Huff, and placed the information in a Police Report. Perry quoted Guerrieri as saying: "Richelle said Reggie was declared a vexatious litigator in Trumbull County and not allowed to bring any court action." (Doc. 1, p. 28, ¶ 114.) According to Huff, Perry also included in the Police Report information about Huff being seen on SDSU Foundation surveillance video around the end of November, 2019, including being inside the building looking for Marshall. Huff asserts that is a lie - - that he was never around the SDSU Foundation building during that time period. (Doc. 1, p. 20-21, ¶¶ 85-87.) The SDSU Foundation issued a "No Trespass Order" against Huff. (*Id.* at 87.)

On January 9, 2020, a hearing was held on all four of the requested protection orders at the Brookings County Courthouse, with Judge Dawn Elshere presiding. Marshall and Huff testified at the hearing. Judge Elshere entered a protection order in favor of Marshall and against Huff after finding that Huff harassed Marshall with the two phone calls and the letter. Huff's

requests for protection orders against Marshall, Doremus and Perry were denied. Huff appealed to the South Dakota Supreme Court, but his appeal was dismissed.

On January 7, 2022, Huff filed a complaint against the same defendants named in this lawsuit, but he voluntarily dismissed that case without prejudice on February 4, 2022. *See* CIV 22-4002.

On February 14, 2022, Huff filed a 45-page complaint against the City of Brookings Police Department, Chief of Police David Erickson, Officer Doremus, Detective Perry, Marshall, Guerrieri, Judge Elshere, the SDSU Foundation, and Steve Erpenbach, President and CEO of the SDSU Foundation. (Doc. 1.) In his complaint, Huff alleges that the defendants violated his civil rights under 42 U.S.C. § 1983. In addition, he asserts state-law claims for abuse of process and defamation.

Huff alleges that his entire case "turns on the fragile ego" of Doremus. (Doc. 1, p. 13, ¶ 52.) Huff asserts that when Doremus learned Huff called Marshall to ask her on a date, Doremus "formed a plan and scheme" to use his position as a police officer to boost his ego and turn his "would be rival," Huff, into a "stalker." (*Id*., p. 17, ¶ 74.) Huff alleges that Doremus pressured Marshall into recording Huff's second phone call to her, so that Huff "could be charged with some kind of obsessive conduct akin to a 'stalker' and Doremus could use such to justify court action to defame the character of Plaintiff Huff set him up for planned unwitting encounter that could then be used to abduct Huff under the guise of a lawful arrest for violating a fraudulently acquired" protection order. (Doc. 1, p. 18, ¶ 77.) Huff asserts that Perry placed false information in the police report to defame Huff and "make it appear as though he had a potentially troubling obsession with Marshall." (*Id*. at pp. 20-21, ¶¶ 85-87.)

On March 10, 2022, Defendants SDSU Foundation and Steve Erpenbach filed a motion to dismiss the claims against them pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. (Doc. 17.) SDSU Foundation and Erpenbach also argue that the defamation claim is barred by the two-year statute of limitations.

On March 14, 2022, Defendant Judge Dawn Elshere filed a motion to dismiss for lack of subject matter jurisdciton pursuant to Federal Rule of Civil Procedure 12(b)(1) and for failure to state a claim under Rule 12(b)(6). (Doc. 22.)

On March 21, 2022, Defendant Richelle Guerrieri filed a motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2) and for failure to properly serve Guerrieri pursuant to Rule 12(b)(5). (Doc. 27.)

On April 20, 2022, Defendant Marissa Marshall filed a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6). (Doc. 41.)

On May 11, 2022, Defendants Brookings Police Department, David Erickson, Joel Perry, and Sean Doremus filed a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6). (Doc. 49.)

Huff has filed responses to each motion to dismiss, and most Defendants have filed reply briefs.

## DISCUSSION

**<u>Judge Dawn Elshere</u>**

Judge Elshere has moved for dismissal under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction, and under Rule 12(b)(6) for failure to state a claim. Plaintiff Huff, as the party asserting subject matter jurisdiction, has the burden of proving that jurisdiction is proper. *V S Ltd. P'ship v. Dept of Hous. and Urban Dev.*, 235 F.3d 1109, 1112 (8th Cir. 2000) (citing *Nucor Corp. v. Nebraska Pub. Power Dist.*, 891 F.2d 1343, 1346 (8th Cir. 1989)). "The district court has the authority to consider matters outside the pleadings on a motion challenging subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1)." *Drevlow v. Lutheran Church, Mo. Synod*, 991 F.2d 468, 470 (8th Cir. 1993) (citing *Osborn v. United States*, 918 F.2d 724, 729 (8th Cir. 1990)). "Because jurisdiction is a threshold issue for the court, the district court has 'broader power to decide its own right to hear the case than it has when the merits of the case are reached.'" *Bellecourt v. United States*, 994 F.2d 427, 430 (8th Cir. 1993) (quoting *Osborn*, 918 F.2d at 729). For purposes of this motion, the Court will take judicial notice of documents from the proceedings before Judge Elshere in state court, including docket sheets from each of the four consolidated protection order proceedings, and the transcript

4

from the January 9, 2020 hearing held on the consolidated proceedings.[1] (Doc. 23, Exhibits A-M.)

It is well established that judges are protected by absolute immunity for their judicial actions. *Pierson v. Ray*, 386 U.S. 547, 553–554 (1967) ("Few doctrines were more solidly established at common law than the immunity of judges from liability for damages for acts committed within their judicial jurisdiction."). The Supreme Court has explained:

> Like other forms of official immunity, judicial immunity is an immunity from suit, not just from ultimate assessment of damages. *Mitchell v. Forsyth,* 472 U.S. 511, 526, 105 S.Ct. 2806, 2815, 86 L.Ed.2d 411 (1985). Accordingly, judicial immunity is not overcome by allegations of bad faith or malice, the existence of which ordinarily cannot be resolved without engaging in discovery and eventual trial. *Pierson v. Ray,* 386 U.S., at 554, 87 S.Ct., at 1218 ("[I]mmunity applies even when the judge is accused of acting maliciously and corruptly"). See also *Harlow v. Fitzgerald,* 457 U.S. 800, 815–819, 102 S.Ct. 2727, 2736–2739, 73 L.Ed.2d 396 (1982) (allegations of malice are insufficient to overcome qualified immunity).

*Mireles v. Waco*, 502 U.S. 9, 11 (1991).

Judges are generally immune from suit if the judge had jurisdiction over the party. *See Stump v. Sparkman*, 435 U.S. 349, 356 (1978) ("[T]he necessary inquiry in determining whether a defendant judge is immune from suit is whether at the time he took the challenged action he had jurisdiction over the subject matter before him."). "A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the 'clear absence of all jurisdiction.'" *Id*. at 356–57 (quoting *Bradley v. Fisher*, 80 U.S. 335, 351 (1872)). Judges are immune from suit with two narrow exceptions. *See Schottel v. Young*, 687 F.3d 370, 373 (8th Cir. 2012). " 'First, a judge is not immune from liability for nonjudicial actions, i.e., actions not taken in the judge's judicial capacity. Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction.' " *Id*. (quoting *Mireles*, 502 U.S. at 11–12 (1991)). These exceptions do not apply here.

---

[1] A federal court may take judicial notice of relevant state court documents. *Knutson v. City of Fargo*, 600 F.3d 992, 1000 (8th Cir. 2010). *See also Eiler v. Avera McKennan Hospital*, 2016 WL 1117441, *1 (D.S.D. 2016); *Waldner v. North American Truck & Trailer, Inc.*, 277 F.R.D. 401, 406 (D.S.D. 2011).

Huff argues that Judge Elshere unlawfully acquired jurisdiction over the protection order cases "so as to use the power of the state to deprive the Plaintiff of his civil rights under the color of law regardless of the actual facts or law," and that she did so "to acquire jurisdiction for a preplanned or fixed outcome." (Doc. 33, pp. 2-3.)  However, it is clear that Judge Elshere had jurisdiction and that, in presiding over the protective order proceedings and in entering a protection order against Huff, Judge Elshere was acting within her judicial capacity.  Thus, Judge Elshere has absolute judicial immunity.  Accordingly, Huff's claims against Judge Elshere are dismissed.

**Richelle Guerrieri**

Huff contends that Perry called Guerrieri during the course of his investigation into Huff and his actions toward Marshall. Huff alleges in his complaint that Guerrieri provided false background information about Huff to Detective Perry.  According to Huff, Guerrieri is a "state actor" because she is a court reporter for a state court in Ohio. (Doc. 1, p. 12,  ¶ 50.)  However, Huff is suing her in "her personal capacity exclusively."  (*Id*., p. 13.)

Guerrieri asserts that this Court lacks personal jurisdiction over her. An action can be dismissed for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2).  "To survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must state sufficient facts in the complaint to support a reasonable inference that [the defendants] can be subjected to jurisdiction within the state." *Dever v. Hentzen Coatings, Inc*., 380 F.3d 1070, 1072 (8th Cir. 2004) (internal quotations omitted).  If personal jurisdiction is contested, "the plaintiff has the burden of proving facts supporting personal jurisdiction."  *Miller v. Nippon Carbon Co., Ltd.*, 528 F.3d 1087, 1090 (8th Cir. 2008).  The plaintiff "need[] only make a prima facie showing of jurisdiction." *Id.*  This prima facie showing must be tested, not by the complaint alone, but by the affidavits and exhibits presented with the motion to dismiss and in opposition to the motion to dismiss.  *Block Indus. v. DHJ Indus., Inc*., 495 F.2d 256, 260 (8th Cir. 1974).  The court must "view the evidence in the light most favorable to the plaintiff and resolve all factual conflicts in its favor in deciding whether the plaintiff made the requisite showing." *K–V Pharm. Co. v. J. Uriach & CIA, S.A.*, 648 F.3d 588, 592 (8th Cir. 2011).

The determination of whether a court has personal jurisdiction over a person or entity is normally a two-step analysis.  *Northrup King Co. v. Compania Productora Semillas*

*Algodoneras Selectas*, *S.A.*, 51 F.3d 1383, 1387 (8th Cir. 1995). First, the applicable state long-arm statute must be satisfied, and second, the court's exercise of jurisdiction must comport with due process. *Id.* South Dakota construes its long-arm statute to confer jurisdiction to the fullest extent permitted by the Due Process Clause. *Dakota Indus., Inc. v. Ever Best Ltd.*, 28 F.3d 910, 915 (8th Cir. 1994). As such, the analysis collapses into one step: the due process analysis. *Id.*

Due process requires that a defendant have "minimum contacts" with the State such that maintaining the suit "does not offend 'traditional notions of fair play and substantial justice.' " *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980); *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). The nonresident defendant's conduct and connection with the forum state must be such that she "should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp.*, 444 U.S. at 297.

The Eighth Circuit summarized these due process requirements:

> In a series of cases following *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), the Supreme Court has elucidated the "minimum contacts" standard that must be satisfied before a nonresident can be subjected to the jurisdiction of a state's courts. Due process requires that out-of-state defendants have " 'fair warning' " that they could be "haled into" court in a foreign jurisdiction. This requirement "is satisfied if the defendant has 'purposefully directed' his activities at residents of the forum ... and the litigation results from alleged injuries that 'arise out of or relate to' those activities.
>
> The contacts with the forum state must be more than " 'random,' " "'fortuitous,' " or " 'attenuated.' " The due process clause forecloses personal jurisdiction unless the actions of the "defendant *himself* ... create [d] a 'substantial connection' with the forum State." Once the court has found that the defendant purposefully established the requisite minimum contacts with the forum state, the court still must determine whether the assertion of jurisdiction comports with " 'fair play and substantial justice.' "

*Dakota Indus., Inc. v. Dakota Sportswear, Inc.,* 946 F.2d 1384, 1389 (8th Cir. 1991) (citations omitted). In assessing the defendant's "reasonable anticipation" of being haled into court, "there must be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Bell Paper Box, Inc. v. U.S. Kids, Inc.,* 22 F.3d 816, 818 (8th Cir. 1994) (quoting *Soo Line R.R.. Co. v. Hawker Siddeley Canada, Inc.,* 950 F.2d 526, 528–29 (8th Cir. 1991)).

7

To evaluate personal jurisdiction under the due process clause, the Court must consider five factors: (1) the nature and quality of the defendant's contacts with South Dakota; (2) the quantity of her contacts with this state; (3) the relation of the cause of action to the contacts; (4) the interest of South Dakota in providing a forum for its residents; and (5) the convenience of the parties. *Burlington Indus., Inc. v. Maples Indus., Inc.,* 97 F.3d 1100, 1102 (8th Cir. 1996) (citing *Land-O-Nod Co. v. Bassett Furniture Indus., Inc.*, 708 F.2d 1338, 1340 (8th Cir. 1983)). The latter two issues are secondary and of less importance than the first three factors. *Land-O-Nod,* 708 F.2d at 1340. When judging minimum contacts, a court should focus on "the relationship among the defendant, the forum, and the litigation." *Id.* (quoting *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977)).

Here, the only contact between Guerrieri and South Dakota alleged by Huff is her phone conversation with Detective Perry when he inquired about Guerrieri's interactions with Huff in Ohio. The allegations in the complaint are that Perry initiated this contact. In support of her motion to dismiss, Guerrieri submitted an affidavit stating that she is and was an Ohio resident at all relevant times. (Doc. 28.) She has never been to South Dakota. She does not own property here, does not work here, and does not conduct any business in South Dakota. Guerrieri does not know any other defendant in this case. Her only connection to South Dakota is this lawsuit and her prior history with Huff.[2]

Guerrieri's uncontroverted evidence shows that, other than answering Detective Perry's questions about Huff, she has no contacts with the state of South Dakota. There is no evidence that Guerrieri purposely directed activities toward South Dakota, or that she conducted activities here. The secondary considerations of the convenience of the parties and South Dakota's interest in providing a forum for its residents do not compel the Court to exercise jurisdiction over Guerrieri in this case.

In short, Huff has not made a prima facie showing of jurisdiction over Guerrieri sufficient to support the exercise of personal jurisdiction over her in this Court. Having determined that no minimum contacts exist to exercise jurisdiction over Guerrieri, after

---

[2] Guerrieri sought and obtained a protection order against Huff in Ohio in 2012. A copy of the pleadings relating to her protection order are attached to Guerrieri's affidavit. (Doc. 28-1.) The Court takes judicial notice of those documents.

8

considering the totality of the circumstances, the applicable law and specific factors for evaluation, this Court determines that due process considerations preclude it from having jurisdiction over Guerrieri in this case. Her motion to dismiss pursuant to Rule 12(b)(2) for lack of jurisdiction is granted.

### **Remaining Defendants and Rule 12(b)(6) Standard**

Having addressed the jurisdictional issues, the Court will turn to the motions to dismiss for failure to state a claim filed by the seven remaining Defendants pursuant to Federal Rule of Civil Procedure 12(b)(6). In ruling on a Rule 12(b)(6) motion to dismiss, the factual allegations of a complaint are assumed true and construed in favor of the plaintiff, "even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (internal quotations omitted). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555 (internal citations omitted). The complaint must allege facts, which, when taken as true, raise more than a speculative right to relief. *Id.; Benton v. Merrill Lynch & Co., Inc.*, 524 F.3d 866, 870 (8th Cir. 2008). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but has not 'show[n]'—'that the pleader is entitled to relief.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (citing Fed. R. Civ. P. 8(a)(2)). "Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id. (citation omitted).*

Complaints by pro se plaintiffs must "be given liberal construction." *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015). "When we say that a pro se complaint should be given liberal construction, we mean that if the essence of an allegation is discernible . . . then the district court should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." *Id*. at 787 (quoting *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004)).

When considering a motion to dismiss under Rule 12(b)(6), the court generally must ignore materials outside the pleadings, but it may consider " 'some materials that are part of the

9

public record or do not contradict the complaint,' as well as materials that are 'necessarily embraced by the pleadings.' " *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999) (citations omitted). In general, material embraced by the complaint include "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleadings." *Ashanti v. City of Golden Valley*, 666 F.3d 1148, 1151 (8th Cir. 2012).

### 1. 42 U.S.C. § 1983

Defendants BPD, Erickson, Perry, and Doremus argue that Huff has failed to establish a viable § 1983 claim because he has failed to show a violation of a federal right. "Standing alone, section 1983 does not establish any substantive rights. Rather, it simply serves as a vehicle for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Henley v. Brown*, 686 F.3d 634, 640 (8th Cir. 2012) (citations and internal quotation marks omitted). To state a claim under § 1983, a plaintiff must establish two essential elements: (1) the violation of a right secured by the Constitution or laws of the United States, and (2) the alleged deprivation was committed by a person acting under the color of state law. *See West v. Atkins,* 487 U.S. 42, 48 (1988). "[G]enerally, a public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law." *Id.* at 50 (citations omitted).

"The first inquiry in any § 1983 suit," the Supreme Court has explained, is "to isolate the precise constitutional violation with which [the defendant] is charged." *Baker v. McCollan*, 443 U.S. 137, 140 (1979). In his complaint, Huff states that the civil rights violated by the various defendants include:

> The right to free speech the right to be free from unreasonable search and governmental intrusion into a law abiding citizen's private affairs including but not limited to the right move about freely with full liberty and without an unwarranted threat of jeopardy by incidental proximity, the right to be free from governmental slander and defamation per se for the purpose of covering up serious and including criminal police misconduct and the right to an appeal to a higher court for review on the merits and the right to not be forced to expend ones own lawfully acquired financial resources and life resource to preserve and defend said rights which are guaranteed in both the US and State of South Dakota constitutions.

10

(Doc. 1, p. 44.)  This statement is the archetype of a "[t]hreadbare recital[ ] of [an] element[ ] of a cause of action, supported by mere conclusory statements," that is insufficient to plead a cause of action. *Iqbal*, 556 U.S. at 678.  Huff does not contend that he was arrested, detained, prosecuted, or convicted of a crime.  Rather, the facts pled by Huff critique the BPD's investigation of Marshall's complaints about Huff, assail assertions made in the police report, and lambaste the ensuing protection order proceedings, but Huff's account does not reflect that he sustained a constitutional injury.  The due process protections of the Fourteenth Amendment apply to deprivations of life, liberty, or property.  To trigger these safeguards, Huff must assert an interest that merits constitutional protection.  Huff may feel he has been treated unfairly, but he has not alleged any injury that would support a § 1983 claim.

Huff's allegations of defamation in the complaint are not actionable under § 1983.  Defamatory publications by a state official, however seriously they may harm someone, do not deprive that person of any liberty interests protected by the due process clause. *Paul v. Davis*, 424 U.S. 693, 712 (1976) (recognizing that, while a state may protect against injury to reputation by virtue of its tort law, a person's reputation does not implicate a "liberty" or "property" interest of the sort protected by the Due Process Clause); *Underwood v. Pritchard*, 638 F.2d 60, 62 (8th Cir. 1981) (defamation per se is not actionable under § 1983).  Simply put, § 1983 does not provide a means by which a plaintiff can seek redress for violations of state law. *See Baker*, 443 U.S. at 146.

Huff alleges that some of the defendants conspired to violate his constitutional rights.  Such a conspiracy claim requires a showing "that the defendant conspired with others to deprive [the plaintiff] of constitutional rights." *White v. McKinley*, 519 F.3d 806, 814 (8th Cir. 2008) (applying this standard to a § 1983 claim).  The plaintiff is additionally required to prove a deprivation of a constitutional right or privilege. *Id*.  Huff's conspiracy claim fails because no constitutional right has been violated.

Even if Huff had asserted a violation of a federal statutory or constitutional right, his conspiracy claim would still fail.  To establish a conspiracy, a plaintiff must allege "specific facts tending to show a meeting of the minds among the alleged coconspirators." *Lawrence v. City of St. Paul*, 740 F. Supp. 2d 1026, 1049 (D. Minn. 2010) (internal quotation marks omitted) (quoting *Murray v. Lene*, 595 F.3d 868, 870 (8th Cir. 2010)).  Allegations that the

parties had an "opportunity to communicate" or "acted in a manner that was consistent with the existence of a conspiracy" are insufficient alone to suggest a conspiracy. *Lawrence*, 740 F. Supp. 2d. at 1050 (citing *Twombly*, 550 U.S. at 570). The plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level" and push the "claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 555, 570. The allegations in Huff's complaint are insufficient to support a § 1983 conspiracy claim. They do not include "specific facts tending to show a meeting of the minds among the alleged conspirators." *Lawrence,* 740 F. Supp. 2d at 1049. Rather, Huff recounts a series of discrete acts by different parties.

For these reasons, the Court finds that Huff's allegations of a conspiracy to deprive him of his constitutional rights do not raise a right to relief above the speculative level or push his claims across the line from conceivable to plausible. Therefore, the Court will dismiss Huff's § 1983 claim.

### 2.  State Law Claims for Defamation and Abuse of Process

Having dismissed the only federal claim over which the Court had original jurisdiction, the Court needs to decide whether to exercise supplemental jurisdiction over the remaining state-law claims against Defendants. 28 U.S.C. § 1367(c)(3) provides that "[t]he district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if [. . .] the district court has dismissed all claims over which it has original jurisdiction." *See Innovative Home Health Care, Inc. v. P.T.-O.T. Assocs. of the Black Hills*, 141 F.3d 1284, 1287–88 (8th Cir. 1998) (noting the section and affirming district court's use of its discretion in declining to exercise supplemental jurisdiction).

The United States Supreme Court has advised:

> [A] federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction over a case brought in that court involving pendent state-law claims. When the balance of these factors indicates that a case properly belongs in state court, as when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice. *Id.,* at 726–727, 86 S.Ct., at 1139. As articulated by *Gibbs,* the doctrine of pendent jurisdiction thus is a doctrine of

12

>flexibility, designed to allow courts to deal with cases involving pendent claims in the manner that most sensibly accommodates a range of concerns and values.

*Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988) (citing *Mine Workers v. Gibbs,* 383 U.S. 715, 726–27 (1966)).

In this case, the Court concludes that the values of judicial economy, convenience, fairness, and comity weigh in favor of declining supplemental jurisdiction over the state law claims. The litigation is in its early stages, and neither the values of economy nor convenience would be disserved by dismissing the case for re-filing in state court. Fairness supports dismissing the action without prejudice, as this Court would not have had original jurisdiction as the case now stands with only state-law claims. Finally, comity suggests that the state courts of South Dakota should be allowed to interpret and apply South Dakota law to the remaining state law claims. *See*, *e.g.*, *Thomas v. Dickel*, 213 F.3d 1023, 1026 (8th Cir. 2000) (explaining that "federal courts should exercise judicial restraint and avoid state law issues wherever possible' " (quoting *Condor Corp. v. City of St. Paul*, 912 F.2d 215, 220 (8th Cir. 1990)). For these reasons, the Court declines to exercise supplemental jurisdiction over the remaining state-law claims. Accordingly,

IT IS ORDERED:

1. That Defendants' motions to dismiss are granted. (Docs. 17, 22, 27, 41, and 49.)

2. That Plaintiff's motions for a preliminary injunction, for a pleading practice order, and to disqualify certain defense counsel are denied as moot (Docs. 3, 5, and 54.)

3. That this case is dismissed without prejudice to Plaintiff's right to refile the remaining state-law claims in state court within 30 days from the date of this Order, pursuant to 28 U.S.C. § 1367(d), unless state law provides for a longer period in which state law claims can be made.

Dated this 6th day of July, 2022.

BY THE COURT:

                                                                                                 Lawrence L. Piersol
ATTEST:                                       United States District Judge
MATTHEW W. THELEN, CLERK